IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

In re: )
)
BETTY TAYLOR, ) Case No. 08-02684-TOM13
)
)
Debtor. )

## MEMORANDUM OPINION AND ORDER

This matter came before the Court for hearing on June 4, 2009 on the Debtor's Motion to Reinstate Stay as to Vanderbilt Mortgage on Mobile Home (the "Motion") and the Objection to the Motion filed by Vanderbilt Mortgage and Finance, Inc. ("Vanderbilt"). (Proceeding No. 54 and Proceeding No. 58). Appearing at the hearing were Betty Taylor (the "Debtor"), Thomas Buck, attorney for the Debtor, Rachel L. Webber, attorney for Vanderbilt and D. Sims Crawford, chapter 13 trustee. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).[1]

## I. FINDINGS OF FACT[2]

On June 4, 2008 the Debtor filed her chapter 13 petition. Prior to her filing for chapter 13, the Debtor had entered into a retail installment contract and security agreement with Vanderbilt on January 20, 2003 (the "Agreement"). In the Agreement, Vanderbilt financed the purchase of the Debtor's mobile home in exchange for a security interest in the Debtor's mobile home and certain real property located in Alabaster, Alabama (collectively, the "Property"). The Debtor indicated on

---

[1]This Memorandum Opinion constitutes findings of facts and conclusions of law pursuant to Federal Rule of Civil Procedure 52, applicable to contested matters pursuant to Federal Rules of Bankruptcy Procedure 7052 and 9014.

[2]Pursuant to Federal Rule of Evidence 201, the Court may take judicial notice of the contents of its own files. *See ITT Rayonier, Inc. v. U.S.*, 651 F.2d 343 (5th Cir. Unit B July 1981); *Florida v. Charley Toppino & Sons, Inc.*, 514 F.2d 700, 704 (5th Cir. 1975).

Schedule D of her bankruptcy petition a disputed debt of $41,848.00 owed to Vanderbilt and further indicated that the Property's value was $30,000.00. Vanderbilt filed its original proof of claim on June 10, 2008, claiming a pre-petition arrearage through June 1, 2008 in the amount of $2690.78 (the "Pre-petition Arrearage"). The Debtor's chapter 13 plan was confirmed on August 15, 2008. The Confirmation Order provided for Vanderbilt to receive direct payments beginning in July 2008. Subsequently, due to the Debtor's nonpayment, Vanderbilt filed for relief from stay on September 10, 2008.[3] Pursuant to the parties' agreement, this Court entered a consent order on October 31, 2008 conditionally denying the stay relief requested and providing for a return to calender in the event of a future default by the Debtor in the direct payments.

On November 5, 2008, Vanderbilt filed an amended proof of claim to reflect a new post-petition arrearage[4] that had accumulated in the amount of $3279.48 in addition to the Pre-Petition Arrearage.[5] A couple months later on January 6, 2009, pursuant to the Court's previous consent order, Vanderbilt renewed its motion for relief due to the Debtor's failure to make the direct monthly payments. (Proceeding No. 41) On February 12, 2009, this Court entered a second consent order conditionally denying the relief from stay (the "Consent Order"). In the Consent Order, the parties agreed that if the Debtor defaulted in her direct payments again, and said default was not cured after a twenty day notice of default to the Debtor, the automatic stay imposed by 11 U.S.C. § 362 would be lifted without further order of this Court. (Proceeding No. 47) Vanderbilt filed yet another

---

[3]The relief from stay motion was titled "Motion for Relief from Stay and Co-Debtor Stay by Vanderbilt." The Agreement indicates there was a co-debtor by the name of Tommy C. Taylor.

[4]The post-petition arrearage was for July 1, 2008 through October 1, 2008.

[5]The proof of claim indicates that the Pre-petition Arrearage ($2690.78) and the post-petition arrearage ($3279.48) totals $6240.26. This total appears to be incorrect and it further appears that the proof of claim should have indicated a total of $5970.26.

amended proof of claim on February 25, 2009, this time to reflect a new post-petition arrearage[6] in the amount of $4919.22. Once again, the Debtor defaulted. Vanderbilt sent notice of default to the Debtor, however, due to the Debtor's failure to cure within the twenty day notice, the automatic stay terminated pursuant to the terms of the Consent Order.

Following the relief from stay, the Debtor filed the Motion and appeared and testified in Court. The Debtor testified the current payoff to Vanderbilt is around $41,000.00, and her arrearage has increased to around $13,000.00. Due to an emergency surgery in January 2009 and her inability to work for a couple months thereafter, the Debtor was unable to make her monthly payments to Vanderbilt for January, February and March of 2009. Her job of 17 years did not provide her with sick leave, so she applied for short-term disability. The short-term disability took a month or so to process, and ultimately provided her with weekly income in the amount of $260.00. Around March, she made payments to Vanderbilt totaling $1070.00, but the Debtor testified that she does not know if those checks were ever cashed. She has since returned to work, where she makes between $278.00 to $370.00 per week, depending on the number of hours she works. The Debtor further testified that her children are now living in the mobile home with her and are willing and able to help her make the payments. When asked about the state of the mobile home, the Debtor admitted that it needs some maintenance and repair.

## II. CONCLUSIONS OF LAW

The filing of a petition for relief under any chapter of the Bankruptcy Code operates as a stay of certain actions. 11 U.S.C. § 362(a). However, upon the filing of a motion by a creditor or other party in interest requesting relief from stay, the Court may enter an order granting the requested

---

[6]The post-petition arrearage included the arrearage for July 1, 2008 through October 1, 2008 and December 1, 2008 through January 1, 2009.

relief. 11 U.S.C. § 362(d). In this case, the automatic stay was lifted pursuant to the Consent Order. The Debtor would like for the Court to "reinstate the stay" due to some extenuating circumstances, such as the Debtor's emergency surgery and brief inability to work, that got the Debtor further behind in her payments. The problem this Court has is that by its very nature, the Consent Order indicates that it is an order entered by the Court whose terms and provisions have been explicitly agreed to by the parties, here, the Debtor and Vanderbilt. This Court has consistently denied actions to alter, amend or set aside consent orders because the Court is reluctant to unravel what was entered into consensually by the parties who were represented by counsel. The setting aside of consent orders has long been frowned upon by all courts. Justice Cardozo, in United States v. Swift & Co., 286 U.S. 106 (1932) stated:

> No doubt the defendants will be better off if the injunction is relaxed, but they are not suffering hardship so extreme and unexpected as to justify us in saying that they are the victims of oppression. Nothing less than a clear showing of grievous wrong evoked by new and unforseen conditions should lead us to change what was decreed after years of litigation and with the consent of all concerned.

When the parties entered into the Consent Order, both sides contemplated that it was possible that the Debtor would again fall behind on her mortgage payments as a conditional remedy was provided for if that happened. Both parties at that time believed that should the Debtor default again, an appropriate remedy was for Vanderbilt to notify the Debtor of the default and give her twenty days to cure. Only if the Debtor did not cure the default within twenty days of the notice would the stay terminate without further order of this Court. Although the exact circumstances which lead to her default, such as her surgery and inability to work while she recovered, may not have been anticipated, it is just one of a number of conceivable sets of circumstances which the Debtor and her counsel could and should have foreseen as possibilities.

The Court is sympathetic to the Debtor's plight and understands that difficult circumstances have prevented the Debtor from performing under her plan and paying creditors such as Vanderbilt as originally intended. However, the Debtor has had three opportunities in this 2008 case to make her payments and keep her home. Instead, it appears she is in a situation she cannot afford. The Debtor was behind in her payments when she filed the case, and the arrearage has continued to grow. Although the Debtor is back at work and has family living with her now who are willing to help her make the payments to Vanderbilt, the Debtor's own testimony concerning the needed repairs and maintenance to the mobile home indicate to the Court that Vanderbilt is not adequately protected. Thus, it would not be fair to Vanderbilt to usurp the Consent Order and deny Vanderbilt its right to protect its collateral. Although the result may seem harsh at first, the present fact situation is unfortunate but is not outside what could have or should have been contemplated by the parties at the time the agreement was made. Accordingly, the Court will not set aside or alter the Consent Order. The stay terminated as a result of the Debtor's default, and Vanderbilt has the right to proceed with its state law remedies pursuant to the Consent Order. Accordingly, the Debtor's Motion is due to be denied. Therefore, it is hereby

**ORDERED, ADJUDGED AND DECREED** that the Debtor's Motion is **DENIED**.

Dated this the 12th day of June, 2009.

/s/ **Tamara O. Mitchell**
TAMARA O. MITCHELL
United States Bankruptcy Judge